2014 COA 83

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Christopher Douglas WISE, Defendant–Appellant.**

**Court of Appeals No. 10CA0832**

Colorado Court of Appeals, Div. I.

Announced July 3, 2014

John W. Suthers, Attorney General, Jillian J. Price, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Karen Mahlman Gerash, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE J. JONES

¶ 1 A jury found defendant, Christopher Douglas Wise, guilty of several offenses, including two felonies, arising out of his theft of a car and subsequent robbery and assault of an elderly woman. The district court adjudicated him a habitual criminal and subsequently imposed lengthy prison sentences which, as relevant here, included consecutive forty-eight year terms on the felony convictions.

¶ 2 In *People v. Wise*, (Colo.App. No. 10CA0832, 2012 WL 3854633, Sept. 6, 2012) (not published pursuant to C.A.R. 35(f)), a division of this court determined that the district court had erroneously denied defendant's challenge for cause to a prospective juror. Following then-applicable · supreme court precedent,[1] the division reversed the

---

1. *See People v. Macrander,* 828 P.2d 234 (Colo. 1992), *overruled by People v. Novotny,* 2014 CO

judgment of conviction and remanded the case for a new trial. The People petitioned the supreme court for a writ of certiorari.

¶ 3 The supreme court granted the People's petition, vacated the division's decision, and remanded the case to this court "for reconsideration in light of *People v. Novotny,* 10SC377, 2014 CO ¶ 18." In *Novotny,* the court abrogated the automatic reversal rule on which the prior division had relied, holding that reversal is required for a district court's deprivation of a defendant's peremptory challenge only where the error was not "harmless under the proper outcome-determinative test." 2014 CO 18, ¶ 27, 320 P.3d 1194.

¶ 4 On remand to this court, defendant filed a motion arguing that applying the holding of *Novotny* to this case would be an unconstitutionally retrospective application of the law, and, alternatively, that he should be allowed an opportunity to present evidence and argument in the district court so that the district court can determine whether the error was harmless. The People opposed that motion, and defendant subsequently filed a reply in support. This court ordered the motion deferred to the merits division, and ordered the parties to submit supplemental briefs addressing whether, under the existing record, the district court's error was harmless.

¶ 5 Having considered the parties' original briefs, their supplemental briefs, defendant's motion, the People's response thereto, and defendant's reply, we hold as follows: (1) we must apply *Novotny*'s holding to this case on the existing record, and may do so without violating defendant's right to due process; (2) remanding the case to the district court for an evidentiary hearing and findings is not warranted; (3) the district court's error resulting in defendant's loss of a peremptory challenge was harmless because defendant has not shown that a biased or incompetent juror participated in deciding his guilt; and (4) the district court did not abuse its discretion in imposing consecutive sentences. • Be-

cause the prior division rejected defendant's other contentions of error, we accordingly affirm the judgment and sentence.

## I. Denial of Challenge for Cause

¶ 6 The district court denied defendant's challenge for cause to prospective juror K. Defendant used one of his peremptory challenges to excuse prospective juror K and eventually used all of his peremptory challenges. On appeal, defendant contended that the district court abused its discretion in denying his challenge to prospective juror K, but he did not assert any other error with respect to the composition of the jury. The prior division held that the district court had erred in denying the challenge for cause to prospective juror K, and we assume that the district court erred for purposes of our analysis.

## A. We Must Apply *Novotny*

¶ 7 Defendant contends in his motion and supplemental brief that applying the holding of *Novotny* to this case would violate his right to due process because he did not have fair warning of *Novotny*'s change in the law. We reject this contention, for two reasons.

¶ 8 First, we are bound by the "mandate rule" to apply the holding of *Novotny*. That rule requires that we follow the supreme court's mandate. *See In re Marriage of Balanson,* 107 P.3d 1037, 1043 (Colo. App.2004); *People v. Gurule,* 699 P.2d 9, 10 (Colo.App.1984); *see also Briggs v. Penn. R.R. Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948) (a lower court "has no power or authority to deviate from the mandate issued by an appellate court"); *Phares v. Don Carlos,* 74 Colo. 356, 357, 221 P. 883, 883 (1923) (following a remand, "[t]he court below cannot do otherwise than follow the decision of this court as announced in the former opinion"); *People v. Allen,* 111 P.3d 518, 520 (Colo.App.2004) (the court of appeals is bound by decisions of the supreme court).

¶ 18, 320 P.3d 1194. Under *Macrander,* where, as here, a court erroneously denied a challenge for cause to a prospective juror, the defendant used a peremptory challenge to excuse that pro-

spective juror, and the defendant ultimately used all of his peremptory challenges, reversal was required. *See id.* at 244.

¶ 9 As noted, the mandate in this case directs us to consider defendant's contention of error in light of *Novotny*. In *Novotny* itself, the court remanded for a determination whether the error was harmless under the "appropriate case specific, outcome-determinative analysis." *Novotny*, ¶ 27. And in *People v. Alfaro*, 2014 CO ¶ 19, 320 P.3d 1191, a case decided the same day as *Novotny* and which also involved the appellate remedy for an erroneous impairment of a defendant's right to use peremptory challenges, the court remanded to this court "for reconsideration under the appropriate standard." *Id.* at ¶ 9. It is therefore clear that we have been directed by the supreme court to determine whether the error was harmless under the appropriate outcome-determinative analysis. We cannot deviate from that mandate.

■ ¶ 10 Second, in any event, we perceive no due process problem with applying the holding of *Novotny* to this case. We note initially that it is questionable whether the premise of defendant's due process argument—that applying the holding of *Novotny* to this case would be a retroactive application of a change in the law—is correct.

¶ 11 The holding in *Novotny* does not affect the process for challenging prospective jurors for cause, the standards applicable to the determination of any such challenge, or any matter relevant to the use of peremptory challenges. Nor does it make criminal that which was not, alter any burden of proof, affect the admissibility or weight of evidence, or enhance a defendant's punishment. *See Novotny*, ¶ 25 ("As a remedy for error rather than a rule involving duties or defenses, or defining error itself, the automatic reversal rule ... can be abandoned with little concern that by doing so we will unfairly upset settled expectations around which the behavior of defendants has been justifiably ordered."). In short, it has no *legal* effect on proceedings in the district court, including both the determination of guilt and punishment. Rather, it changes only the framework for determining

whether the appellate court must reverse a conviction because a defendant used a peremptory challenge to excuse a juror whom the defendant had unsuccessfully challenged for cause. Applying it here would not apply it to a prior appeal, but to a pending appeal as to which the appellate remedy is not yet final.[2]

¶ 12 Nonetheless, assuming that a retroactive application of a change in the law would result from applying the holding of *Novotny* to this case, we conclude that defendant's right to due process would not thereby be violated.

■ ¶ 13 A contention that a judicial decision improperly operates retroactively "must be analyzed under the Due Process Clause and 'in accordance with the more basic and general principle of fair warning.' " *People v. LaRosa*, 2013 CO 2, ¶ 44, 293 P.3d 567 (quoting in part *Rogers v. Tennessee*, 532 U.S. 451, 452, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001)). The due process requirement of fair warning is violated by retroactive application of a judicial decision "only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' " *Rogers*, 532 U.S. at 462, 121 S.Ct. 1693 (quoting in part *Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)); *accord LaRosa*, ¶ 44. Applying the holding of *Novotny* to this case does not violate this fair warning requirement.

¶ 14 The automatic reversal rule was not definitively adopted in Colorado until the supreme court's decision in *People v. Macrander*, 828 P.2d 234 (Colo.1992), *overruled by Novotny*. *See Novotny*, ¶ 14 (noting that prior to *Macrander* the court's treatment of erroneous challenge-for-cause rulings had been inconsistent). After *Macrander* was decided (indeed, even before *Macrander* was decided), a series of United States Supreme Court and Colorado Supreme Court cases cast ever-growing doubt on the validity of the

---

**2.** It may be that the *Novotny* holding will have some practical effect in some cases on how defendants use challenges for cause and peremptory challenges. But any such effect would not implicate constitutional or statutory rights; it would pertain instead only to strategy. Indeed, defendant does not explain how the *Novotny* decision impairs a defendant's ability to participate in ensuring a fair and impartial jury.

automatic reversal rule. *Novotny,* ¶¶ 15–23. In 2000, in *People v. Lefebre,* 5 P.3d 295 (Colo.2000), *overruled by Novotny,* the court, by a vote of four to one, with two justices not participating, reaffirmed the automatic reversal rule. In the past three decades, the automatic reversal rule has been disavowed in numerous jurisdictions which had previously embraced it. *See People v. Roldan,* —— P.3d ——, ——, 2011 WL 174248 (Colo. App.2011) (Bernard, J., specially concurring), *rev'd,* 2014 CO ¶ 22, 322 P.3d 922. Indeed, by the time of defendant's trial, and certainly by the time of defendant's appeal, the tide had turned to a degree that only a small minority of states adhered to the automatic reversal rule. *See id.* And the federal courts had also rejected it. *See United States v. Martinez–Salazar,* 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000); *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). The rule was under consistent attack by commentators and judges. Several judges of this court had, over the years, called for the supreme court to reexamine its continued viability. *See Roldan,* —— P.3d at —— (Bernard, J., specially concurring) (identifying cases and judges).[3] Therefore, we are not persuaded that the supreme court's abrogation of the rule was both unexpected and indefensible under the law which had been expressed prior to defendant's trial or appeal. *See Rogers,* 532 U.S. at 462, 121 S.Ct. 1693; *LaRosa,* ¶ 44.[4]

¶ 15 *LaRosa,* 2013 CO ¶ 2, 293 P.3d 567, on which defendant principally relies, is distinguishable. In that case, defendant was convicted of an offense following trial, but a division of this court reversed, holding that the evidence was insufficient to support the conviction because the People had not presented evidence corroborating the defendant's confession. This was an application of the corpus delicti rule, which had been consistently applied in Colorado for more than one hundred years. *Id.* at ¶ 46. The supreme court abrogated the corpus delicti rule on certiorari review, but declined to apply its holding to the case before it because of the widespread acceptance of the rule and the long and consistent history of its use in Colorado. *Id.*

¶ 16 Had the supreme court in *LaRosa* applied its holding to the case before it, the result would have been to uphold a conviction on the basis of evidence that, at the time of trial, was insufficient as a matter of law under controlling case law. As discussed above, there would be no such effect in this case if the holding of *Novotny* is applied. And as also discussed above, the rule abrogated by *Novotny* did not enjoy the widespread acceptance and consistent history of application in Colorado that the rule at issue in *LaRosa* did.

### B. Remand to the District Court is Not Warranted

¶ 17 We also deny defendant's alternative request that we remand the case to the district court for an evidentiary hearing and determination of harmlessness. Nothing in *Novotny* or the supreme court's mandate in this case indicates that such a remand would be necessary or appropriate. And defendant does not explain what such a hearing would entail. As discussed, *Novotny* has no legal effect on district court procedure or indeed on challenges for cause or peremptory challenges. We are therefore not persuaded that an evidentiary hearing could shed light on whether defendant was tried before a fair and impartial jury—which is, after all, the right protected by both challenges for cause and peremptory challenges. *See Martinez–Salazar,* 528 U.S. at 316, 120 S.Ct. 774 (the "principal reason for peremptories" is "to help secure the constitutional guarantee of trial by an impartial jury"); *Novotny,* ¶ 22 ("The Supreme Court ... has now expressly rejected the notion that peremptory challenges have any constitutional dimension or purpose, other than as a means to achieve the end of an impartial jury." (citations omit-

---

3. Indeed, the division's original disposition of this case included a concurrence by Judge Russel criticizing the automatic reversal rule. The author of the division's original majority decision also had criticized the rule in a prior unpublished decision.

4. We also observe that the defendant in *Novotny* filed a petition for rehearing raising the same due process argument defendant raises in this case. The supreme court denied that petition.

ted)); *Carrillo v. People*, 974 P.2d 478, 486 (Colo.1999) (the right to challenge a prospective juror for cause is an integral part of the right to a fair trial).

¶ 18 Nor are we persuaded that such a hearing could shed light on whether defendant was otherwise harmed by the use of a peremptory challenge to excuse prospective juror K. To the extent defendant would attempt to make a record challenging for cause any juror who actually served, we observe that defendant has already waived any such challenge. *See* Crim. P. 24(b)(2) ("All matters pertaining to the qualifications and competency of the prospective jurors shall be deemed waived by the parties if not raised prior to the swearing in of the jury to try the case...."); *People v. Lewis*, 180 Colo. 423, 428, 506 P.2d 125, 127 (1973); *People v. Asberry*, 172 P.3d 927, 930 (Colo.App.2007).

¶ 19 Because *Novotny* affects only the framework for determining the remedy for an alleged error, we conclude that the assessment must be based on the existing record. This court routinely reviews contentions of error under outcome-determinative tests, and we fail to see why the error here would not lend itself to such an assessment.

¶ 20 Therefore, we deny defendant's motion and proceed to apply *Novotny*'s holding to the facts of this case.

## C. The Error Does Not Require Reversal

¶ 21 In *Novotny*, the court instructed that "an appropriate case specific, outcome-determinative analysis" must be applied when determining whether the error requires reversal. *Novotny*, ¶ 27. Read in context, it is clear that the court was referring to an assessment under a harmless error test. *See id.* at ¶¶ 18–21, 23. But the court did not make explicit which harmless error test— ordinary harmless error or constitutional harmless error—should be applied.

¶ 22 There are two ways of looking at it. If the error is viewed as the erroneous denial of a challenge for cause, the constitutional harmless error test—under which the People must show that the error was harmless beyond a reasonable doubt, *see Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116— would arguably apply. This is because the right to challenge a juror for cause is derived from the constitutional right to a fair and impartial jury. *See Carrillo*, 974 P.2d at 486; *People v. Drake*, 748 P.2d 1237, 1243 (Colo. 1988).

¶ 23 But if the "error" is viewed as the deprivation of a peremptory challenge, the ordinary harmless error test would seem to apply. This is because the right to use peremptory challenges is purely statutory; it is not derived from the Constitution. *See Ross*, 487 U.S. at 88, 108 S.Ct. 2273 ("[P]eremptory challenges are not of constitutional dimension."); *Novotny*, ¶ 22.

¶ 24 We conclude that the latter approach is correct, for three reasons. First, where, as here, a defendant used a peremptory challenge to excuse a prospective juror whom the defendant had unsuccessfully challenged for cause, any "error" in the denial of the challenge for cause was "cured"—the prospective juror who should have been excused was excused. *See Ross*, 487 U.S. at 88, 108 S.Ct. 2273. The deprivation that remains in this circumstance is the loss of the peremptory challenge. Thus, the harm to be evaluated is the harm attributable to the loss of one of the statutorily limited-in-number peremptory challenges. *See State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993).[5]

¶ 25 Second, in *Novotny*, the court appears to have regarded the error at issue in a case such as this as the deprivation of a peremptory challenge. *See Novotny*, ¶ 14 (referring to the "erroneous ruling on a challenge for cause adversely impacting the defendant's

---

**5.** Under federal law, a defendant's use of a peremptory challenge to excuse a potential juror as to whom the court erroneously denied a challenge for cause is not even deemed an impairment of the right to exercise peremptory challenges. *United States v. Martinez–Salazar*, 528 U.S. 304, 315–17, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). Some states adhere to that view as well. *See, e.g., State v. Entzi*, 615 N.W.2d 145, 149 (N.D.2000); *State v. Fire*, 145 Wash.2d 152, 34 P.3d 1218, 1224, 1225–26 (2001) (plurality opinion and Alexander, C.J., concurring). But, as discussed below, the court in *Novotny* appears to have assumed such an impairment in these circumstances under state law.

ability to shape the jury through peremptory challenges"), ¶ 22 (same), ¶ 23 (referring to the "violation of our statutes and rules prescribing the use of peremptory challenges"), ¶ 27 (holding that "allowing a defendant fewer peremptory challenges than authorized, or than available to and exercised by the prosecution, does not, in and of itself, amount to structural error"). As discussed, such a deprivation is not a constitutional violation.

¶ 26 And third, courts in other jurisdictions that recognize an impairment in this context and that have rejected the automatic reversal rule have applied the ordinary harmless error test, reasoning that only the nonconstitutional right to exercise peremptory challenges is at issue. *See, e.g., Dailey v. State,* 828 So.2d 340, 343–44 (Ala.2001); *State v. Hickman,* 205 Ariz. 192, 68 P.3d 418, 424 (2003); *Klahn v. State,* 96 P.3d 472, 482–83 (Wyo.2004).

■■■ ¶ 27 We therefore apply the ordinary harmless error test. Under that test we must disregard any error that does not affect a party's substantial rights. Crim. P. 52(a); *Novotny,* ¶ 20. This requires us to evaluate "the likelihood that the outcome of the proceedings in question were affected by the error." *Novotny,* ¶ 20. The defendant must "establish a reasonable probability that the error contributed to the verdict." *Krutsinger v. People,* 219 P.3d 1054, 1063 (Colo. 2009); *see also People v. Quintana,* 665 P.2d 605, 612 (Colo.1983) ("[T]he appropriate question is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings.").

■■■ ¶ 28 In the specific situation that confronts us, the court in *Novotny* made clear that the mere loss of a peremptory challenge, standing alone, is insufficient to require reversal. *Novotny,* ¶ 27. Courts in other jurisdictions have held that to make a showing of prejudice sufficient to require reversal in this context, the defendant ordinarily must show that a biased or incompetent juror participated in deciding his guilt. *See, e.g., Minch v. State,* 934 P.2d 764, 769–70 (Alaska Ct.App.1997); *Hickman,* 68 P.3d at 424–25; *Neuendorf,* 509 N.W.2d at 746–47; *State v. Menzies,* 889 P.2d 393, 398 (Utah 1994). We agree with the reasoning of those courts.[6]

■■■ ¶ 29 Defendant has not shown that a biased or incompetent juror participated in deciding his guilt.[7] Therefore, we conclude that the error in this case was harmless.

¶ 30 We acknowledge that in most (perhaps close to all) cases, a defendant will be unable to show such prejudice as a result of using a peremptory challenge to excuse a prospective juror who should have been excused for cause. But we do not view that difficulty as an indication that there is some inherent harm which is difficult to precisely identify or quantify. Rather, we view it as an indication that no cognizable harm inheres in these circumstances. *See United States v. Patterson,* 215 F.3d 776, 782 (7th Cir.) ("Doubtless it will often be impossible to show that a change in the number of peremptory challenges affected the outcome of a trial—but inability to trace adverse effects to a mistake does not justify reversing a conviction; it shows instead that there is no warrant for disturbing the judgment."), *vacated in part on other grounds,* 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000).

■■■ ¶ 31 The law is concerned with the impairment of at least "substantial rights,"

---

6. Some courts have also suggested that prejudice may be shown where a court repeatedly and deliberately denies meritorious challenges for cause so as to force the defendant to use his peremptory challenges, *see, e.g., Martinez–Salazar,* 528 U.S. at 316, 120 S.Ct. 774; *Ross,* 487 U.S. at 91 n. 5, 108 S.Ct. 2273; *Novotny,* ¶ 23 (distinguishing the situation in that case from a situation where a violation of statutes or rules prescribing the use of peremptory challenges is committed "in other than good faith"); *State v. Lindell,* 245 Wis.2d 689, 629 N.W.2d 223, 245 (2001), or where a properly exercised peremptory challenge is denied and an objectionable juror is thereby forced upon the defendant, *see Hickman,* 68 P.3d at 424; *but see People v. Hankins,* 2014 COA 71, ¶ 32, —— P.3d —— (rejecting the position that service of a merely objectionable juror (as opposed to one excusable for cause) shows prejudice). We are not confronted with either situation in this case.

7. In his supplemental brief, defendant concedes that "[t]his record does not show whether there was further prejudice or partiality on the remaining venire. . . ."

not the mere correction of errors. *See* Crim. P. 52(a). As is often said, a defendant is entitled to a fair trial, not a perfect one. *People v. Flockhart,* 2013 CO 42, ¶ 36, 304 P.3d 227; *People v. Dunaway,* 88 P.3d 619, 631 (Colo.2004). Though defendant has shown that his trial was not perfect because an error was committed, he has not shown that his trial was rendered unfair.

## II. Consecutive Sentences

¶ 32 In the opinion issued before remand, the prior division addressed all of defendant's contentions except his contention that the district court abused its discretion in imposing consecutive sentences for his two felony convictions. We address that contention now, and reject it.

¶ 33 Where, as here, a defendant's multiple convictions are not based on identical evidence, the district court has discretion to impose either concurrent or consecutive sentences. *Juhl v. People,* 172 P.3d 896, 899 (Colo.2007); *People v. Muckle,* 107 P.3d 380, 383–84 (Colo.2005). "In exercising its discretion, the court must consider the nature and elements of the offense, the character and rehabilitative potential of the offender, any aggravating or mitigating circumstances, and the public interest in safety and deterrence." *People v. Pasillas–Sanchez,* 214 P.3d 520, 531 (Colo.App.2009); *see also People v. Plancarte,* 232 P.3d 186, 192 (Colo.App.2009). But the court need not discuss each of these considerations when imposing a sentence; a reasonable explanation of the sentence suffices. *People v. Walker,* 724 P.2d 666, 669 (Colo.1986); *Plancarte,* 232 P.3d at 192–93; *Pasillas–Sanchez,* 214 P.3d at 531.

¶ 34 Defendant contends that the district court imposed consecutive sentences "without any explanation other than generally to reference 'the circumstances' of the case and to note that the offenses were separate

criminal episodes." The record, however, does not bear that out.

¶ 35 At the sentencing hearing, the court said, in determining that habitual sentencing was appropriate, that it had considered "the evidence presented at the trial and the information contained in the presentence investigation report."[8] And in conducting an abbreviated proportionality review at sentencing, the court expressly considered "the circumstances of the offense, the long and troubling criminal history, the failures to comply with less severe sentencing in the past, ... the grave risk of harm inflicted upon the public and [the victim] in particular, ... and the totality of the circumstances as presented to the court at the trial and in these documents."

¶ 36 Thus, considered in context, the court's later reference to the "circumstances of the case," in imposing consecutive sentences, can reasonably be understood as a reference to the circumstances to which it had earlier referred. We are not willing to conclude that the court ignored the considerations to which it had referred only moments earlier. Instead, we conclude that the court's remarks, considered as a whole, constitute a sufficient explanation of the basis for its decision to impose consecutive sentences.

## III. Conclusion

¶ 37 For the foregoing reasons, and those expressed in the prior division's opinion, the judgment and sentence are affirmed.

Taubman and Ney *, JJ., concur.

---

8. The presentence investigation report discussed the facts of the offenses of which defendant was convicted, defendant's extensive criminal history, the fact he had "done poorly on prior periods of supervision," defendant's life history, defendant's education, and his refusal to accept responsibility for his conduct. It opined that defendant presents "a very high risk to the community."

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2013.